FILED
2015 Nov-23  AM 10:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **STEWART P. SPARKS, III, on behalf of himself and others similarly situated,** )<br>)<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**CULLMAN ELECTRIC COOPERATIVE,** )<br>)<br>**Defendant.** ) | **Case No. 5:15-cv-322-MHH** |
| **TAMMY BATES on behalf of herself and others similarly situated,** )<br>)<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**JOE WHEELER ELECTRIC MEMBERSHIP CORPORATION,** )<br>)<br>**Defendant.** ) | **Case No. 5:15-cv-334-MHH** |
| **JOHN LAKE on behalf of himself and others similarly situated,** )<br>)<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**MARSHALL-DEKALB ELECTRIC COOPERATIVE,** )<br>)<br>**Defendant.** ) | **Case No. 4:15-cv-339-MHH** |

1

| | |
|---|---|
| **HERMAN KRITNER, JR.,** on behalf of himself and others similarly situated,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>**ARAB ELECTRIC COOPERATIVE,**  )<br>)<br>Defendant.  ) | **Case No. 4:15-cv-341-MHH** |
| **THOMAS MALONE,** on behalf of himself and others similarly situated,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>**FRANKLIN ELECTRIC COOPERATIVE,**  )<br>)<br>Defendant.  ) | **Case No. 3:15-cv-387-MHH** |
| **JOHN HOLLIS NEYMAN,** on behalf of himself and others similarly situated,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>**CHEROKEE ELECTRIC COOPERATIVE,**  )<br>)<br>Defendant.  ) | **Case No. 4:15-cv-586-MHH** |

## **MEMORANDUM OPINION AND ORDER**

The plaintiffs in these consolidated putative class actions allege that the defendant electric cooperatives have failed to reduce electric resale rates or

distribute excess revenues as patronage capital in violation of Alabama Code § 37-6-20. After all of the defendant electric cooperatives removed their cases to federal court, each plaintiff moved to remand, and the Tennessee Valley Authority moved to intervene in each case.[1] This memorandum opinion and order addresses the plaintiffs' motions to remand and the TVA's pending motions to intervene in *Sparks v. Cullman Electric Cooperative*, Case No. 15-cv-322 and *Bates v. Joe Wheeler Electric Membership Corporation*, Case No. 15-cv-334.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The Tennessee Valley Authority ("TVA") is a federal agency established by the TVA Act. *See* 16 U.S.C. § 831 *et seq.* The TVA Act provides the TVA's Board of Directors with the authority to sell surplus power to "States, counties, municipalities, corporations, partnerships, or individuals." 16 U.S.C. § 831i. "[T]o carry out said authority, the Board is authorized to enter into contracts for such sale . . . ." *Id.* "[T]he Board is authorized to include in any contract for the

---

[1] Before the actions were consolidated for pretrial purposes, Judge Virginia Hopkins denied motions to remand and granted the TVA's motions to intervene in the cases over which she originally presided. *See* Docs. 22 and 23 in *Lake v. Marshall-DeKalb Electric Cooperative*, Case No. 4:15-CV-339; Docs. 21 and 22 in *Kritner v. Arab Electric Cooperative*, Case No. 4:15-cv-341; and Docs. 20 and 21 in *Neyman v. Cherokee Electric Cooperative*, Case No. 4:15-cv-586. After the plaintiffs filed notices of voluntary dismissal in *Malone v. Franklin Electric Cooperative*, Case No. 3:15-cv-387 (*see* Doc. 33) and *Neyman v. Cherokee Electric Cooperative*, Case No. 4:15-cv-586 (*see* Doc. 29), the Court dismissed those cases without prejudice. *See* Doc. 34 in *Malone*; Doc. 30 in *Neyman*. In separate text orders, the undersigned denied the plaintiffs' motions to remand in *Sparks v. Cullman Electric Cooperative*, Case No. 5:15-cv-322 (*see* Doc. 25) and *Bates v. Joe Wheeler Electric Membership Corporation*, Case No. 5:15-cv-334 (*see* Doc. 30). The undersigned informed the parties in those cases that the Court would explain in a separate opinion the reasons for denying the plaintiffs' motions to remand. The TVA's motions to intervene in *Sparks* (*see* Doc. 10) and *Bates* (*see* Doc. 15) are pending.

3

sale of power such terms and conditions, including resale rate schedules, and to provide for such rules and regulations as in its judgment may be necessary or desirable for carrying out the purposes of this [Act]." *Id.*

Pursuant to its statutory authority, the TVA sells power to electric cooperatives in northern Alabama.[2] The electric cooperatives resell the electricity to consumers pursuant to separate "power contracts" between each electric cooperative and the TVA. (*See* Doc. 22-2 in Case No. 15-cv-322; Doc. 26-2 in Case No. 15-cv-334).[3] Plaintiffs Stewart P. Sparks, III and Tammy Bates are consumers who are members of the Cullman Electric Cooperative and the Joe Wheeler Electric Membership Corporation, respectively.

Among other things, the TVA's power contracts place restrictions on the electric cooperatives' "resale rates"—the rates that the electric cooperatives charge when distributing power throughout the cooperatives' respective regions. (*See* Doc. 22-2, § 5(b)). The contracts provide that the resale rates must conform to the TVA's "Schedule of Rates and Charges" and that the electric cooperatives cannot make any changes to their rates without the consultation and agreement of the TVA. (*See* Doc. 22-2, §§ 5-6). Additionally, the power contracts incorporate a

---

[2] The TVA supplies electric power throughout the 80,000 square miles comprising the Tennessee Valley, which includes 155 municipal and cooperative distributors. (Doc. 22-1 in Case No. 15-cv-322 at ¶¶ 2-3).

[3] Because the pertinent portions of each electric cooperative's power contract with the TVA are identical, the Court will cite only to the power contract between the Cullman Electric Cooperative and the TVA for the remainder of this opinion.

"Schedule of Terms and Conditions," which controls how and when the parties may adjust resale rates. (Doc. 22-2, pp. 12-13). According to the TVA's vice president of operations and regulatory assurance, Dwain Lanier, the "[s]tandard terms and conditions in TVA's contracts with its cooperative distributors preclude patronage refunds to members of the cooperatives," and any reduction in resale rates "requires the express approval of TVA." (Doc. 22-1 at ¶¶ 5, 8).

In January 2015, Mr. Sparks and Ms. Bates each filed class action complaints in Alabama state court against their respective electric cooperatives. (*See* Doc. 1-1 in Case No. 15-cv-322; Doc. 1-1 in Case No. 15-cv-334). Each action seeks a declaration that the putative class is entitled to rate reductions or refunds of excess revenue in the form of patronage capital pursuant to Ala. Code § 37-6-20.

In late February 2015, the electric cooperatives removed each action to federal court, premising subject matter jurisdiction on 28 U.S.C. § 1442(a), the "officer removal" statute. (*See* Doc. 1 in Case No. 15-cv-322; Doc. 1 in Case No. 15-cv-334). In March 2015, the TVA filed motions to intervene in both cases, and the plaintiffs each filed a motion to remand. (*See* Docs. 10 and 18 in Case No. 15-cv-322; Docs. 15 and 21 in Case No. 15-cv-334). The parties have briefed these motions and have participated in oral argument.

5

## II. DISCUSSION

### A. The Court Has Subject Matter Jurisdiction over the Plaintiffs' Actions Against the Electric Cooperatives.

As stated, the electric cooperatives removed the *Sparks* and *Bates* actions to federal court via the federal officer removal statute. 28 U.S.C. § 1442(a). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A removing defendant bears the burden of proving proper federal subject matter jurisdiction by a preponderance of the evidence. *Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1242 (11th Cir. 2001).

Generally, courts construe removal statutes strictly and resolve uncertainties in favor of remand. *See, e.g.*, *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). The federal officer removal statute is an exception to the general rule. Courts must construe that removal statute liberally "enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law." *Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969). "The right of removal is made absolute whenever a suit in a state court is for any act 'under color' of federal office, regardless of whether the suit could originally have been brought in a federal court." *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996) (internal quotation marks omitted). "If the statutory

6

prerequisites are satisfied, section 1442(a)(1) provides an independent federal jurisdictional basis." *Id.*

The federal officer removal statute authorizes removal of a civil or criminal action against or directed to "any officer (or any person acting under that officer) of the United States or any agency thereof[] . . . for or relating to any act under color of such office." 28 U.S.C. § 1442(a). A private actor may qualify as a "person" under the federal officer removal statute. *See, e.g.*, *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008); *Alsup v. 3-Day Blinds, Inc.*, 435 F. Supp. 2d 838, 845 n.3 (S.D. Ill. 2006) (listing cases holding that a corporation is a "person" under this statute). To remove a case under section 1442(a)(1), a defendant "must advance a 'colorable defense arising out of his duty to enforce federal law.'" *Magnin*, 91 F.3d at 1427 (quoting *Mesa v. California*, 489 U.S. 121, 133 (1989)). The defendant also "must establish that there is a 'causal connection between what the officer has done under asserted official authority' and the action against him." *Id.* (quoting *Maryland v. Soper*, 270 U.S. 9, 33 (1926)).

1.  **Colorable Defense**

To be a colorable defense, the "defense need only be plausible; its ultimate validity is not to be determined at the time of removal." *Id.* (citing *Mesa*, 489 U.S. at 129). The Supreme Court has construed the colorable defense requirement broadly, "recognizing that 'one of the most important reasons for removal is to

have the validity' of the [federal defense] tried in a federal court." *See Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999).

The electric cooperatives have presented a colorable federal defense to the plaintiffs' claims. In their removal petitions, the co-ops contend that the TVA Act preempts the plaintiffs' claims. (Doc. 1, p. 7 in Case No. 15-cv-322; Doc. 1, p. 7 in Case No. 15-cv-334). In support of this argument, the electric cooperatives argue that both Congress's broad grant of power to the TVA under the TVA Act and the restrictions in the power contracts prevent the cooperatives from unilaterally reducing rates or issuing refund payments per Alabama Code § 37-6-20. The plaintiffs argue that federal law does not preempt Alabama Code § 37-6-20 because the conditions in the power contracts are consistent with § 37-6-20.

"[P]reemption exists where it is impossible for a private party to comply with both state and federal requirements or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 486 (11th Cir. 2015) (internal quotation marks and citation omitted). The power contracts and Mr. Lanier's declarations support the electric cooperatives' contention that they can neither reduce resale rates nor issue refunds as patronage capital without first consulting with, and obtaining approval from, the TVA. Additionally, this limitation on the electric cooperatives' rate-related discretion falls squarely within

the TVA's wide range of authority under the TVA Act. The cooperatives' assertion that they cannot comply with Ala. Code § 37-6-20 without running afoul of their obligations to the TVA under the TVA Act is a plausible defense to this action. Thus, the Court finds that the electric cooperatives' federal preemption defense is "colorable."

**b.     Causal Connection**

To establish a causal connection between what the cooperatives have done based on federal authority and the conduct that gives rise to this action, the electric cooperatives must show that the plaintiffs' claims arise from the electric cooperatives' performance of the cooperatives' contracts with the TVA. *See Marley v. Elliot Turbomachinery Co., Inc.*, 545 F. Supp. 2d 1266, 1274 (S.D. Fla. 2008) (citing *Magnin*, 91 F.3d at 1427-28); *see also Isaacson*, 517 F.3d 129, 137 (2d Cir. 2008) ("[N]on-governmental corporate defendants[] . . . must demonstrate that the acts for which they are being sued[] . . . occurred because of what they were asked to do by the Government.") (emphasis omitted).

The agreements between the electric cooperatives and the TVA support the cooperatives' argument that the terms of those agreements prohibit the cooperatives from reducing resale rates or issuing refunds as patronage capital— the omissions for which the plaintiffs have sued the cooperatives. The contracts contain various provisions that restrict the electric cooperatives' authority to

9

unilaterally change or adjust rates. (Doc. 22-2, pp. 5-6, 12-13). In addition, Mr. Lanier's declarations indicate that the TVA prohibited the issuance of patronage refunds. (Doc. 22-1, ¶¶ 5, 8). Thus, the Court finds a causal connection between the electric cooperatives' conduct under asserted official authority and the plaintiffs' claims against the cooperatives.

## III. MOTIONS TO INTERVENE

**Rule 24(a)(2)**

A party seeking to intervene as of right may do so under Federal Rule of Civil Procedure 24(a)(2) if: (1) the party's application to intervene is timely; (2) the party has an interest relating to the property or transaction which is the subject of the action; (3) the party is so situated that disposition of the action, as a practical matter, may impede or impair the party's ability to protect that interest; and (4) the party's interest is represented inadequately by the existing parties to the suit. *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). If a party establishes each of these four elements, a district court must allow the party to intervene. *Id.* With respect to intervention under Rule 24(a)(2), "[a]ny doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action." *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993).

As to the timeliness element, there is no specific time before which a nonparty must move to intervene under Rule 24(a)(2). *See Chiles*, 865 F.2d at 1213 ("Timeliness is not a word of exactitude or of precisely measurable dimensions. The requirement of timeliness must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice.") (quoting *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970)). The TVA filed its motions to intervene in both cases on March 6, 2015, less than six weeks after the plaintiffs filed their underlying complaints in state court and less than two weeks after the defendants removed the cases to federal court. Thus, the TVA's motion was timely. *See, e.g.*, *id.* (finding motion timely when submitted seven months after case was filed); *Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1260 (11th Cir. 2002) (finding motion timely when filed six months after proposed intervenor became aware of case); *Defenders of Wildlife v. Bureau of Ocean Energy Management*, Civ. Act. No. 10-0254-WS-C, 2010 WL 5139101, at *2 (S.D. Ala. Dec. 9, 2010) (finding motion timely when filed three months after lawsuit began).

The TVA also has a direct, substantial, legally protectable interest in the proceeding such that the TVA is at least a real party in interest in the underlying transaction. *See Chiles*, 865 F.2d at 1213-14; *Huff v. Comm'r of IRS*, 743 F.3d 790, 796 (11th Cir. 2014). The TVA produces, owns, and has congressionally

11

delegated authority and discretion to dispose of the electricity that the electric cooperatives resell to local consumers. *See* 16 U.S.C. § 831i. Additionally, the TVA has an interest in ensuring that the transactions between the local electric cooperatives and consumers are consistent with the TVA's broader goal of allocating the supply of electricity across the Tennessee Valley region. The plaintiffs' requested relief (i.e., declarations stating that the plaintiffs are entitled to patronage refunds or rate reductions) would, as a practical matter, impede or impair the TVA's ability to protect its interest in distributing power and setting resale rates in a manner consistent with its overall power supply scheme. Thus, the TVA has satisfied the second and third elements of the test for intervention.

"The 'inadequate representation' requirement 'should be treated as minimal' and [it] is satisfied 'unless it is clear that [the existing parties] will provide adequate representation.'" *Huff*, 743 F.3d at 800 (quoting *Chiles*, 865 F.2d at 1214). Although the electric cooperatives and the TVA take the same position with respect to this litigation, the electric cooperatives do not adequately represent the TVA's interests. The electric cooperatives are concerned with carrying out the terms of their individual contracts with the TVA. The TVA's interest, on the other hand, extends to its overall goal of ensuring that 155 municipal and cooperative distributors comply with the terms of their respective contracts, thereby furthering the TVA's broader policy objective of supplying power throughout the Tennessee

Valley region. Additionally, the electric cooperatives do not have the same institutional knowledge as the TVA with respect to the interrelationship between supply of power, the TVA Act, and the power contracts. *See id.* at 800-01. The plaintiffs clearly do not represent the TVA's interests. Consequently, the Court finds that none of the existing parties adequately represents the TVA's interests. Thus, the TVA may intervene in these actions as a matter of right under Rule 24(a)(2).[4]

## IV. CONCLUSION

Consistent with the Court's previous text orders denying the plaintiffs' motions to remand in *Sparks* and *Bates* (*see* Doc. 25 in Case No. 15-cv-322; Doc. 30 in Case No. 15-cv-334), the Court finds that the actions in those cases were properly removed under the federal officer removal statute. Additionally, pursuant to Rule 24(a)(2), the Court **GRANTS** the TVA's motions to intervene in *Sparks* and *Bates*. (Doc. 10 in Case No. 15-cv-322; Doc. 15 in Case No. 15-cv-334).

**DONE** and **ORDERED** this November 23, 2015.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[4] Alternatively, the Court would find that the TVA qualifies for permissive intervention under Federal Rule of Civil Procedure 24(b)(2). A party may intervene under Rule 24(b)(2) if the party can show that: (1) its application to intervene is timely; and (2) its claim or defense and the main action have a common question of law or fact. It is "wholly discretionary with the court whether to allow intervention under Rule 24(b) . . . ." *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1246 (11th Cir. 2006).